RECEIVED

JAN 1 2 2006

CLERK U.S. DISTRICT COURT
ANCHORAGE, ALASKA

Heidi Drygas, Esq.
Kevin Dougherty, Esq.
2501 Commercial Drive
Anchorage, AK 99501
(907) 276-1640
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| LABORERS LOCAL 341,<br><br>    Plaintiff,<br><br>  v.<br><br>ANCHORAGE SAND AND GRAVEL<br>COMPANY, INC.,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. A05-250 CV (JWS) |

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

At the heart of arbitration is the ability of two
parties to select a neutral arbitrator to decide their
dispute. Parties can accomplish this task only when the
arbitrator discloses all facts which may indicate
partiality or bias in favor or against one party. An
arbitrator pledges to uphold the highest standard of

Laborers Local 341 v. Anchorage Sand and Gravel Company, Inc.
Case No. A05-250 CV

1

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

impartiality and has an affirmative duty to disclose all
potential conflicts of interest.  Yet Arbitrator Clark
Milne violated his duty of full disclosure when he failed
to disclose to both Laborers Local 341 ("the Union") and
Anchorage Sand and Gravel Company, Inc. ("AS&G") that his
son, Abraham Milne, had been rejected from the Alaska
Laborers Training Trust Apprenticeship Program (hereinafter
"Laborers Apprenticeship Program").  The parties were
therefore deprived of the opportunity to select a neutral
arbitrator to preside over their dispute.  For the reasons
stated herein, the Union is entitled to a vacatur of the
arbitration award.

Facts

Steve Pope, a member of Laborers Local 341,
worked at AS&G for 19 years until he was terminated on May
13, 2005.  At the time, Steve was a laborer in AS&G's batch
plant and was the Union steward.  Management cited "safety
violations" as the reason for his termination.  On May 26,
2005, the Union filed a grievance on behalf of Steve Pope.
The parties moved the grievance to arbitration and retained

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

Clark Milne to serve as the arbitrator.  E-mail

correspondence reveals that Arbitrator Milne accepted his

appointment as arbitrator on June 7, 2005.  (E-mail

Correspondence Between Robert Johnson and Clark Milne at

p. 1, attached as Exh. A.)  In that correspondence, Mr.

Milne stated:

> I am pleased to say that I foresee and infer no
> conflicts of interest at this time that would in
> any way cause me to be unable to properly and
> neutrally handle the arbitration of this dispute.
> I do not have, and have never had, any fiscal
> interest in, or direct involvement with, the
> Laborers Union, Local 341, AS&G, these
> organizations' employees, or [the grievant].

(E-mail Correspondence at p. 1.)  The Union and AS&G

arbitrated the grievance in Anchorage on June 29, 2005.

Prior to the beginning of the arbitration, Arbitrator Milne

stated that he perceived no conflicts of interest with

either party.  (Aff. of Michael Gallagher at ¶ 5, attached

as Exh. B.)  Arbitrator Milne rendered a decision on July

5, 2005, which upheld Steve Pope's termination.


On or about July 11, 2005, Mike Gallagher,

Business Manager for Laborers Local 341 in Anchorage and an

Executive Board member of the Alaska District Council of

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

Laborers,[1] learned that Arbitrator Milne's son, Abraham Milne, was twice rejected from the Laborers Apprenticeship Program.  (Aff. of Michael Gallagher at ¶¶ 6, 7.)  The Alaska Laborers Training Trust operates two apprenticeship schools- one in Anchorage and one in Fairbanks.  Dan Simien, President and Business Agent of Laborers Local 942 in Fairbanks and Executive Board member of the Alaska District Council of Laborers, interviewed Abraham Milne on both occasions that he applied to the Laborers Apprenticeship Program.  (Aff. of Daniel Simien at ¶ 4, attached as Exh. C.)  The Laborers did not select him for the program on either occasion.  (Aff. of Daniel Simien at ¶ 5.)

The Union received confirmation from Les Lauinger, Training Director at the Alaska Laborers Training School, that Abraham Milne twice failed to be selected for the Laborers Apprenticeship Program in June 2004 and in May 2005.  (Letter from Leslie N. Lauinger, dated July 15, 2005, attached as Exh. D; see also Letter from Leslie N.

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

[1] The Alaska District Council of Laborers is the statewide council for the three locals of the Laborers International Union of North America (LIUNA).  The three locals are Laborers Local 341, Laborers Local 942, and Public Employees Local 71.

Laborers Local 341 v. Anchorage Sand and Gravel Company, Inc.
Case No. A05-250 CV

4

Lauinger, dated September 7, 2005, attached as Exh. E.)
Mr. Lauinger confirmed that Abraham Milne listed Clark R.
Milne as his father on his application to the program.
(Letter from Leslie N. Lauinger, dated September 7, 2005.)
Mr. Lauinger's letter stated that Abraham Milne listed his
residence address as "1119 Coppet, Fairbanks 99709."
(Letter from Leslie N. Lauinger, dated September 7, 2005.)
In the 2003/2004 ACS Phone Directory for the Fairbanks
area, Clark Milne's address is listed as identical to his
son's address: 1119 Coppet Street, Fairbanks.  (Excerpt
from 2003/2004 ACS Directory, Fairbanks, attached as
Exh. F.)  Additionally, Arbitrator Milne lists 1119 Coppet
Street in Fairbanks as his address on his Decision and
Award letter to the parties.  (Decision and Award Letter,
dated July 5, 2005, attached as Exh. G.)

     Tim Sharp, Business Manager for Laborers Local
942 in Fairbanks and Executive Board member of the Alaska
District Council of Laborers, had a conversation with Clark
Milne about his son, Abraham Milne, in August 2004.  (Aff.
of Tim Sharp at ¶ 6, attached as Exh. H.)  This
conversation took place after Abraham Milne was rejected

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

for the first time from the Laborers Apprenticeship Program in June 2004. In that conversation, Mr. Sharp discussed the Laborers Apprenticeship Program with Clark Milne. (Aff. of Tim Sharp at ¶ 6.) Mr. Sharp told Clark Milne that he should encourage his son to reapply to the Laborers Apprenticeship Program. (Aff. of Tim Sharp at ¶ 6.) During that conversation, it was clear to Mr. Sharp that Clark Milne was fully aware that his son had applied to the Laborers Apprenticeship Program and had not been selected. (Aff. of Tim Sharp at ¶ 7.)

Mike Gallagher has attested by affidavit that if he had known about the father-son relationship between Clark and Abraham Milne, and had Clark Milne properly disclosed the fact that his son had been rejected by the Laborers Apprenticeship Program, Laborers Local 341 would not have selected Clark Milne to arbitrate their dispute. (Aff. of Michael Gallagher at ¶ 8.)

## Standard of Review

Summary judgment may be granted when, in viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and judgment may be entered for the moving party as a matter of law.   Fed. Rule Civ. P. 56(c); <u>United States v. CNA Fin. Corp.</u>, 381 F. Supp. 2d 1088, 1091 (D. Alaska 2005).

A court may vacate an arbitration award upon a finding of evident partiality.   <u>Schmitz v. Zilveti</u>, 20 F.3d 1043, 1046 (9th Cir. 1994).   In a non-disclosure case, the party challenging the arbitration decision has the burden of showing the arbitrator's evident partiality.   <u>Woods v. Saturn Distribution Corp.</u>, 78 F.3d 424, 427 (9th Cir. 1996).

Argument

I.   An Arbitrator's Duty of Full Disclosure Required
     Arbitrator Milne to Disclose That His Son Was Rejected
     From the Laborers Apprenticeship Program

        An arbitrator must maintain the highest degree of
impartiality and has a duty to fully disclose any perceived
conflicts of interest which may indicate possible bias.   In
Commonwealth Coatings Corp v. Continental Casualty Co., et
al., the U.S. Supreme Court held that arbitrators must
"disclose to the parties any dealings that might create an
impression of possible bias" even where no actual bias
exists.   393 U.S. 145, 149 (1968).   The Supreme Court
stated that judges should be "even more scrupulous to
safeguard the impartiality of arbitrators than judges"
since arbitrators "have completely free rein to decide the
law as well as the facts and are not subject to appellate
review".   Id.   This strict legal standard does not tolerate
the non-disclosure of familial adversarial or sympathetic
relationships.

        Section 12(a) of the Revised Uniform Arbitration
Act (RUAA) (2000) states:

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

> Before accepting appointment, an individual who
> is requested to serve as an arbitrator, after
> making a reasonable inquiry, shall disclose to
> all parties to the agreement to arbitrate and
> arbitration proceeding and to any other
> arbitrators **any known facts that a reasonable
> person would consider likely to affect the
> impartiality of the arbitrator in the arbitration
> proceeding**[.]

(emphasis added).  The RUAA holds that in the event of an

arbitrator's non-disclosure under 12(a), a party may move

to vacate the award.


A reasonable person would conclude that Abraham

Milne's rejection from the Laborers Apprenticeship Program

on two separate occasions would affect his father's

impartiality during the arbitration proceedings.  Courts

are especially suspect of father-son relationships

violating or tainting the impartiality standard.  In

Morelite Construction Corp. v. New York City District

Council of Carpenters Benefits Funds, an arbitrator failed

to disclose prior to the arbitration proceeding that his

father was the general president of the union involved in

the arbitration.  748 F.2d 79, 81 (2d Cir. 1984).  The

arbitrator ruled in favor of the union.  Id.  Upon appeal,

the Second Circuit held:

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

> [W]ithout knowing more (about the father-son
> relationship), we are bound by our strong feeling
> that sons are more often than not loyal to their
> fathers, partial to their fathers, and biased on
> behalf of their fathers.  We cannot in good
> conscience allow the entering of an award
> grounded in what we perceive to be such
> unfairness.

Id. at 84.  The court remanded to the district court with
instructions to vacate the arbitrator's award.  Id. at 85.

Similar to the court's finding in Morelite,
Arbitrator Milne may have felt animosity or bias against
the Union due to the fact that the Laborers Apprenticeship
Program rejected his son.  Whether actual bias existed is
irrelevant.  Just as the court held in Morelite that sons
are usually loyal to their fathers, fathers are equally
loyal to their sons.  The truth remains that Arbitrator
Milne had a duty to disclose that his son applied to the
Union's apprenticeship program and was not selected.

Section 2(B)(3) of the Code of Professional
Responsibility for Arbitrators of Labor-Management Disputes
(2003) states:

Laborers Local 341 v. Anchorage Sand and Gravel Company, Inc.
Case No. A05-250 CV

10

> An arbitrator must not permit personal
> relationships to affect decision-making.
>
> Prior to acceptance of an appointment, an
> arbitrator must disclose to the parties or to the
> administrative agency involved **any close personal
> relationship** or other circumstance...which **might
> reasonably raise a question as to the
> arbitrator's impartiality.**

(emphasis added).  The Union contends that due to the

father-son relationship which existed between Arbitrator

Milne and his son, Abraham, Arbitrator Milne had a duty to

disclose the fact that his son had applied to and was

rejected from the Laborers Apprenticeship Program.   The

question is not whether Arbitrator Milne was, in fact,

biased against the Union in rendering his award.   Rather,

the legal question is whether the non-disclosure "rais[es]

a question as to the arbitrator's impartiality."   The Union

contends that it does.

    As the U.S. Supreme Court held in Commonwealth

Coatings, arbitration proceedings are not "hampered" by the

requirement that "arbitrators disclose to the parties any

dealings that might create an impression of possible bias."

393 U.S. 145, 149 (1968) (emphasis added).   Under this

broad mandate, Arbitrator Milne was required to disclose

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

that his son had been rejected from the Union's apprenticeship program.  Only then could the Union have made an informed decision on whether to proceed in arbitration with the selection of Arbitrator Milne.

II.   Due to Arbitrator Milne's Violation of the "Evident Partiality" Standard for Non-Disclosure Cases, the Union is Entitled to a Vacatur of the Arbitration Award

A.   Non-Disclosure Cases vs. Actual Bias Cases

Arbitrator Milne's violation of his duty of full disclosure deprived the parties of their opportunity to make an intelligent and informed decision regarding the selection of a neutral arbitrator to decide their dispute. The standard for vacating an arbitration decision in a non-disclosure case is much less demanding than in a case where a party claims that an arbitrator had "actual bias" against one of the parties.  Schmitz v. Zilveti, 20 F.3d 1043, 1047 (9th Cir. 1994).  The logical reason behind this less-restrictive standard is due to the fact that in cases of non-disclosure, the courts have reasoned that "the integrity of the process by which arbitrators are chosen is at issue."  Id.  In actual bias cases, however, a court

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

must *find* actual bias.   Id.   In non-disclosure cases, the Ninth Circuit has held that vacatur of an arbitral award is "appropriate where the arbitrator's failure to disclose information gives an impression of bias in favor of one party."   Woods v. Saturn Distribution Corp., 78 F.3d 424, 427 (9th Cir. 1996).   Whether the decision of the arbitrator is faulty of flawed is irrelevant.   Id.

### B. "Evident Partiality"

The Union contends that "evident partiality" exists when an arbitrator fails to disclose that his son was rejected from the apprenticeship program of one of the parties to the dispute.   The Ninth Circuit has held that "'evident partiality' is present when undisclosed facts show 'a reasonable impression of partiality.'"   Schmitz, 20 F.3d at 1046.[2]   The "evident partiality" standard for vacating an arbitration award applies to cases of non-disclosure, as opposed to cases alleging actual bias.   Id. at 1046-47.   In determining whether an arbitrator had a

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

---

[2] One court has stated that "[a]lthough the Federal Arbitration Act (FAA) 'does not apply to disputes stemming from collective bargaining agreements'...courts have applied FAA evident partiality standards to arbitration awards involving collective bargaining agreements."   See Consolidation Coal Co. v. Local 1643, United Mine Workers of America, 48 F.3d 125, 128-29 (4th Cir. 1995); see also 9 U.S.C. § 10.

Laborers Local 341 v. Anchorage Sand and Gravel Company, Inc.
Case No. A05-250 CV

duty to disclose certain information, courts employ an objective "reasonable person" standard.  Evident partiality exists when "a relationship [] would persuade a reasonable person that the arbitrator is likely to be partial to one side in the dispute."  McNaughton & Rodgers, et al. v. Besser, 932 P.2d 819 (Colo. 1996).  The Fourth Circuit has stated:

> [A] party seeking vacatur must put forward facts that *objectively* demonstrate such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives.

ANR Coal Co., Inc. v. Cogentrix of North Carolina, Inc., 173 F.3d 493, 501 (4th Cir. 1999) (emphasis added).  Therefore, the *subjective* views of the arbitrator are not controlling.  A reasonable person would likely conclude that the father-son relationship that exists here demonstrates such a degree of partiality as to affect the arbitration proceedings.

At least one court has faced the issue of whether a father-son relationship amounted to evident partiality.  It held that "reasonable people would have to believe [the father-son relationship] provides strong evidence of

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA, 99501
(907) 276-1640

partiality by the arbitrator." Morelite, 748 F.2d at 85.

In another case, a court faced the issue of whether the

existence of a sibling relationship resulted in evident

partiality by the arbitrator. See Consolidation Coal Co.

v. Local 1643, United Mine Workers of America, 48 F.3d 125

(4th Cir. 1995). In that case, which involved an

arbitration between the union and an employer, it was

subsequently discovered that the arbitrator's brother

worked for the union in another state. The court refused

to vacate the award, holding that "a court should not

assume the same degree of loyalty and partiality in a

sibling relationship *that it can assume in a father-son*

*relationship*[.]" Id. at 129 (emphasis added).


As the Union's evidence reveals, Abraham Milne

lived with his father at both times when he applied for

admittance into the Laborers apprenticeship program.

(Letter from Leslie N. Lauinger, dated September 7, 2005;

see also Excerpt from 2003/2004 ACS Directory, Fairbanks.)

Additionally, Arbitrator Milne was aware of the fact that

his son had applied to the Laborers Apprenticeship Program

and was denied admittance. (See Aff. of Tim Sharp at

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

¶¶ 6, 7.)  Taken together, these facts dictate that
Arbitrator Milne had a duty to disclose his son's rejection
from the Laborers Apprenticeship Program prior to
arbitrating the dispute between the Union and AS&G.

Additionally, the issue of proximity in time is
problematic for Arbitrator Milne.  Abraham Milne was
rejected from the Laborers apprenticeship program as
recently as May 2005.  (Letter from Leslie N. Lauinger,
dated July 15, 2005.)  Arbitrator Milne accepted the
position as arbitrator of the dispute between the Union and
AS&G a mere month after his son was most recently rejected
from the Laborers Apprenticeship Program.  (E-mail
Correspondence Between Robert Johnson and Clark Milne at p.
1.)

In addition to his duty of disclosure, Arbitrator
Milne had a duty to investigate whether his son's rejection
from the Laborers Training School created a conflict of
interest.  In Schmitz, parties to a securities dispute
submitted their case to a three-member arbitration panel.
Id. at 1044.  After the panel rendered its award, the

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

losing party discovered that one of the members on the panel worked for a law firm who represented the parent company of the successful party. Id. In finding "evident partiality," the court held that while the arbitrator may not have actual knowledge, he had a "duty to investigate the conflict at issue." Id. at 1049. The Court reasoned that "parties can choose their arbitrators intelligently only when facts showing potential partiality are disclosed" and thus vacated the arbitration award. Id. at 1047.

Similar to the court's holding in Schmitz, the fact that Arbitrator Milne's son applied to an apprentice program of the Laborers Union should have "tipped" him off that further investigation was necessary and required. The Laborers Apprenticeship Program is a statewide organization involving both of the Laborers construction locals in Alaska- Locals 341 and 942. As the affidavit of Tim Sharp reveals, Arbitrator Milne was aware that his son had applied to the apprenticeship program operated by the Laborers Union. (Aff. of Tim Sharp at ¶¶ 6, 7.) Arbitrator Milne was, of course, fully aware that the arbitration involved the Laborers Union. The Union was

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

very disheartened to discover <u>after</u> the arbitration that the father-son relationship was not disclosed.  The Union was never given the opportunity to decide for itself whether this relationship would create a problem for the Union.  The onus is placed upon the arbitrator to disclose to the parties any relationships that could create an impression of bias.  In this regard, Arbitrator Milne failed.

Protection of the integrity of the process is of particular importance in arbitration, where the decision of the arbitrator is often final and binding upon the parties. Arbitrator Milne's lapse in judgment deprived the Union of its opportunity for a fair and impartial hearing.  All parties to an arbitration are entitled to be made aware of facts which indicate an arbitrator's partiality or bias. Arbitrator Milne's breach of his duty to disclose all relevant facts prior to the commencement of the arbitration hearing critically affected the integrity of the parties' arbitral process.

Laborers Local 341 v. Anchorage Sand and Gravel Company, Inc.
Case No. A05-250 CV

## Conclusion

For the reasons stated herein, Plaintiff respectfully requests that this court grant its Motion for Summary Judgment and VACATE the arbitration award.

DATED at Anchorage, Alaska this 11th day of January, 2006.

Attorneys for
Laborers Local 341

Heidi Drygas
ABA No. 0311075

Kevin Dougherty
ABA No. 811036

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

Certificate of Service

I certify that a copy of this document was served this 12 day of January, 2006 to:

Robert Johnson, Esq.
900 W. 5th Ave., Suite 600
Anchorage, AK 99501

Tana Hart

Laborers Local 341 v. Anchorage Sand and Gravel Company, Inc.
Case No. A05-250 CV