Robert M. Johnson
Wohlforth, Johnson, Brecht, Cartledge & Brooking
900 West 5th Avenue, Suite 600
Anchorage, Alaska  99501
(907) 276-6401

Attorneys for Defendant
Anchorage Sand & Gravel Co., Inc.

# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| LABORERS LOCAL 341, <br><br>    Plaintiff, <br><br> vs. <br><br> ANCHORAGE SAND AND GRAVEL COMPANY, INC., <br><br>    Defendant. | Case No. A05-250 CV (JWS) |

### MEMORANDUM IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This memorandum supports entry of summary judgment in favor of defendant Anchorage Sand & Gravel Co., Inc. ("AS&G") in this matter for two primary reasons: <u>first</u>, when the known facts in this matter are given proper context, there is no basis in law to overturn the arbitration in this matter as a consequence of non-disclosure; <u>second</u>, plaintiff Local 341 has as a matter of fact and law waived its opportunity to object to the arbitrator's

Laborer's Local 341 v. AS&G A05-250                                     Page 1
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

alleged non-disclosure. Defendant AS&G recognizes, however, that the court may determine material facts to be in dispute, and if so (as will be addressed later in this memorandum), summary judgment in favor of plaintiff may not be entered.

## Introduction

The court is aware that this case involves Local 341's attempt to vacate an arbitrator's award terminating Local 341's shop steward at AS&G. The court previously denied AS&G's attempt to dismiss this case on the grounds of untimeliness. Order, Docket 12. The court however specifically agreed with AS&G's position "that there is a strong public policy interest in the finality of arbitration: 'once an arbitration has occurred, an action to overturn it is contrary to the goals of prompt finality built into collective bargaining agreements . . . the very point of using arbitration is to afford quick and final relief in a collective bargaining arena.' " Docket 12 at 9. It is that finality which AS&G seeks to preserve and which forms the basis for opposing plaintiff's action herein, including its Motion for Summary Judgment.

## Factual Background[1]

There is no dispute that Clark Milne acted as an arbitrator in a dispute between Local 341 and AS&G, or that the arbitration process arose from the collective bargaining agreement between two specific parties, Local 341 and AS&G. About June 6, 2005, the

---

[1] The factual background is based on the submitted affidavits (both from Local 341 and AS&G), attached documents and the deposition transcripts of Clark Milne (Exhibit A) and Michael Gallagher (Exhibit B) attached hereto.

Laborer's Local 341 v. AS&G A05-250 Page 2
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

parties contacted Mr. Milne and Mr. Milne advised that he had no conflicts with "Local 341" or AS&G. Exhibit A at 25 [Milne Deposition, exhibit 6 attached to deposition]. Mr. Milne was duly appointed by the parties and on June 29, 2005, Mr. Milne convened the arbitration and reiterated his belief that he had no conflicts. Exhibit A at 8 [Milne Deposition, 27, Line 17]. Mr. Milne rendered a written decision on July 5, 2005. Exhibit A attached to pleadings at Docket 8. Mr. Milne ruled in favor of AS&G's position - - that is, upholding the termination of Local 341 shop steward Steve Pope.

The parties do not dispute that Mr. Milne's son Abraham Milne resided with Mr. Milne in Fairbanks, Alaska. Abraham Milne is now 21 years old. Exhibit A at 4 [Milne Deposition, 12, line 13]. Abraham Milne applied in 2004 and in 2005 to a laborer's apprenticeship program in Fairbanks to work in Fairbanks. Exhibit A at 4-5 [Milne Deposition, 13-17]. Mr. Milne in his deposition stated that Abraham Milne applied for a number of positions and the apprenticeship program, including the Carpenter's Union. Exhibit A at 4-5 [Milne Deposition, 13-14]. Mr. Milne knew prior to June 29, 2005 that his son was unsuccessful in his 2004 application to the apprenticeship program. Id. Mr. Milne stated that he subsequently became aware that his son had not been accepted in 2005, but Mr. Milne had no recollection of when he became aware of that rejection and specifically could not recall whether it had occurred before or after the arbitration in this matter. Exhibit A at 7-10 [Milne Deposition, 25-26, 32, 34, 37]. The application to the apprenticeship program was one of many attempts by Abraham Milne to obtain work. His lack of success in at least getting into the laborer's apprenticeship program created no

Laborer's Local 341 v. AS&G A05-250                Page 3
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

consternation for Clark Milne and did not give rise to concerns on his part. Exhibit A at 5 [Milne Deposition, 15-17].

Mr. Milne did not disclose to AS&G or Local 341 anything regarding his son's application to the apprenticeship program or his son's failure to obtain entry into that apprenticeship program. As stated in his deposition, he did not give notice because he simply drew no connection with the Local 341-AS&G matter and didn't think of it. Exhibit A at 8 [Milne Deposition 28-29].

Subsequent to delivery of the written arbitration decision on July 5, 2005, Mike Gallagher, the business manager for Local 341 conversed with Dan Simien, business manager of Local 942 regarding the arbitration decision. Exhibits B and C, Docket 13 [plaintiff's Motion/Memo for Summary Judgment]. Mr. Simien made mention of Clark Milne's relationship to Abraham Milne, an unsuccessful candidate in the Fairbanks apprenticeship program. Id. Gallagher had not heard of this fact before, so it now triggered an opportunity for Local 341 to challenge the unsuccessful decision to terminate its shop steward. The relationship between the apprenticeship program and Local 341 through Abraham Milne's unsuccessful application to the apprenticeship program was so obscure as to be beyond Clark Milne's concept of necessary disclosure requirements. Exhibit A at 8 [Milne Deposition 28-29]. Mr. Milne was candid about disclosing possible conflicts as evident in his thorough disclosure of other - - including Anchorage - - conceivable connections. Exhibit A at 25 [Milne Deposition, attachment 6]. That he did

Laborer's Local 341 v. AS&G A05-250                Page 4
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

not disclose his relationship to Abraham Milne and Abraham's lack of success with an apprenticeship program is not surprising.

## Argument

I. NO LEGAL OR FACTUAL BASES EXIST TO VACATE THE ARBITRATION AWARD BASED ON THE ARBITRATOR'S NON-DISCLOSURE OF HIS PATERNAL RELATIONSHIP TO AN UNSUCCESSFUL APPRENTICESHIP CANDIDATE.

A. The Union's Argument Is Not Premised on Bias but on Simple Non-disclosure.

The Union's action to vacate Clark Milne's award is not based upon actual bias by Mr. Milne. The Union bases its claims solely upon Mr. Milne's failure to disclose his son Abraham Milne's unsuccessful application with the apprenticeship program, a program the Union now draws as closely linked to Local 341. Indeed, Michael Gallagher testified that he thought Mr. Milne "seems like a very honest person." Exhibit B at 11 [Gallagher Deposition 40, line 25]. The Union's argument is based on a technicality rather than actuality. As this memorandum will further indicate, that technicality is just that: a technicality based upon an attenuated set of circumstances that afford no basis for vacating Clark Milne's decision.

B. No Rules of Conduct Applicable in this Circumstance Required the Disclosure Necessary in this Matter.

The parties to this matter selected Mr. Milne voluntarily. Indeed the parties short circuited the normal process for appointing arbitrators in this matter. Article XV of the collective bargaining agreement specifies a mechanism for appointing arbitrators: each party appointing an arbitrator and each of those two arbitrators jointly selecting the third

Laborer's Local 341 v. AS&G A05-250   Page 5
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

arbitrator. That process was short circuited so that only Mr. Milne was appointed. Exhibit A at 12-15 [Milne Deposition attachments 1 and 2]; Exhibit C [Steve Lovs Affidavit].

Nothing in Article XV requires application of a particular set of rules and standards. Exhibit A at 15 [Milne Deposition, attachment 2]. For example, the American Arbitration Association ("AAA") rules are not adopted by reference. Nor is any particular standard of law adopted: the Federal Arbitration Act is not adopted; the Uniform Arbitration Act under Alaska state law is not adopted. There is therefore no particular provision that requires for example that all father-son relationships be disclosed or that disclosure be made about all familial relationships including any employment related actions with anything including the laborers trade anywhere. While Mr. Milne stated that he would abide by the rules of arbitrator ethics (Exhibit A at 9 [Milne Deposition 31-32]), no rules were specified.

The parties cannot expect application of a standard they have not specified. <u>Woods v. Saturn Distribution Corporation</u>, 78 F.3d 424, 429 fn 5 (9th Cir. 1996). But in any event, and under any adopted standard, an impossibility cannot be demanded: Mr. Milne's failure to disclose an alleged relationship between his son and Local 341 would not be required under any standards because the disclosure is based upon a relationship no one really could or would perceive. A reasonable person would not have thought to disclose it, Mr. Milne did not.

> Q. Do you agree that you should have disclosed the fact that Abe had twice been rejected from the Laborers apprenticeship program prior to accepting your nod as arbitrator?
> A. If it had occurred to me, I would have disclosed it. I will say that again in a slightly different way. The reason I didn't disclose it was I never thought of

Laborer's Local 341 v. AS&G A05-250          Page 6
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

> it. Up to the point of reading the pleadings, it never occurred to me. Therefore, I chose not to disclose it. If - - let me go still farther. If it occurred to me, if I had thought about the nexus, or, Oh, Laborers-Abe, which I didn't, I think it would have been proper to disclose. I even extrapolate that I would have disclosed it, but, unfortunately, it never occurred to me. And the next direct step from that is, it is my statement too, that, therefore, I didn't participate in any bias or partiality or anything because it never occurred to me. Up until the pleadings, I never thought about Laborers and me including that path.
> You can tell I'm saying this multiple times because it is in a way an answer to your question. Unfortunately, I never got to your point. I think, technically your question is no. I couldn't disclose it if I never thought of it.

Exhibit A at 8 [Milne Deposition, 28-29].

Mr. Milne of course feels bad his arbitration has been challenged. He has never had an arbitration challenged before in his 20 years of practice. Exhibit A at 3 [Milne Deposition 7, line 21-22]. He specifically stated that, because he did not know the legal outcome of whether or not he really needed to disclose the issue, his expressed regrets not disclosing it turn upon the inconvenience that it has caused to the parties. Exhibit A at 10 [Milne Deposition 33-34]. Mr. Milne, a gracious person, expressed very human concerns that he might have prevented the subsequent dispute notwithstanding any obligation he might or might not have actually had making the disclosure. Id. His expressions of regret and concern do not constitute any admission or acknowledgment that he in fact needed to make the disclosure. Id. That Mr. Milne might regret not disclosing it because it later caused an expenditure of time and energy by the parties does not give rise to admission that disclosure was legally necessary to support a decision.



Laborer's Local 341 v. AS&G A05-250   Page 7
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

### C. The Father-son Relationship Has No Rational Relevancy Here.

The Union bases its action and motion on the father-son relationship between Clark Milne and his 21 year old son, Abraham.[2] But that is not enough: the son has to have some linkage to Local 341 for the relationship to have relevancy. In the primary father-son case cited by the Union, the son was the arbitrator and the father "during the pendency of the arbitration had been named general president of the international union" and had been "trustee of the District Union" involved in the arbitration. Morelite Construction v. NYC District Council of Carpenters, 748 F.2d 79, 80-81 (2d Cir.1984). Surely such a set of high level connections between the arbitrator/son and the union official/father is a clear and compelling issue for disclosure! And surely the Morelite situation is vastly different than the Milne father-son situation. Morelite did not hold that a father-son relationship would result in the per se vacation of an award. Even after acknowledging that "our strong feeling that sons are more often than not loyal to their fathers, partial to their fathers, and biased on behalf of the fathers" (748 F.2d at 84), the Morelite court held:

> We need not, and do not, attempt to set forth a list of familial or other relationships that will result in the *per se* vacation of an arbitration award, except to suggest that such a list would most likely be very short.

478 F.2d at 85. In the Morelite context - - the father's very substantial union position and the father-son relationship - - constituted the "uncontested relationship here at issue." Id.

---

[2] Abraham Milne lived with the arbitrator and his family. The arbitrator knew of his son's general efforts at promoting his career (Exhibit A at 4-6 [Milne Deposition 13-21]), but nothing suggests that the arbitrator was intimately in control of his adult son's life-path.

Laborer's Local 341 v. AS&G A05-250                    Page 8
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

Courts citing Morelite also noted the role the undisclosed father held as the governing context for Morelite. Consolidation Coal Co. v. Local 1643, United Mine Workers, 48 F.3d 125, 129 (4th Cir. 1995); Hobet Mining, Inc. v. International Union, UMWA, 877 F. Supp. 1011 (S.D. W. Va. 1994).[3]

The egregious circumstances found in Morelite are in stark contrast with the undisclosed apprenticeship efforts in Fairbanks by young Abraham Milne and his father's arbitration of an Anchorage dispute between Local 341 and AS&G. Factual context to describe the relevant relationships is necessary because otherwise every father must disclose existence of a son even if the son has nothing to do with anything. And the parties here did not require identification of family members. Here, Abraham Milne had no relationship with Local 341 - - he had a fleeting relationship with an apprenticeship program affiliated only in a very remote sense with Local 341. Abraham Milne was

(a) not even applying to a program within the jurisdictional boundaries of Local 341 (Fairbanks v. Anchorage);

---

[3] Local 341 cites Woods v. Saturn Distribution Corporation, supra. In Woods the Ninth Circuit cited Morelite in order to commend the rejection of an argument to vacate an award based on Morelite. The Woods court found that, "these cases [Morelite and another case] involve significantly different facts from the instant appeal." 78 F.3d at 429. The court then, as dictum, described Morelite as holding that "vacatur was warranted only by the father-son relationship" and suggested that Consolidation Coal, supra, contrasted with Morelite. Id. But this description of Morelite, unnecessary to the court's decision in Woods, if taken out of context mischaracterizes Morelite and in fact contrasts with the description of Morelite by the Consolidation Coal court.

Laborer's Local 341 v. AS&G A05-250                 Page 9
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

(b) was but an applicant in a large pool without any apparent visibility to Local 341 or its officials (Exhibit B at 5-6 [Gallagher Deposition 16-18]);

(c) had no dispute or grievance with any laborers entity of any kind much less Local 341 regarding his unsuccessful applications (Exhibit A at 5 [Milne Deposition 16-17]; Exhibit B at 9 [Gallagher Deposition 30]); and

(d)     had a father who was only generally aware of his job applications and who never complained about or intervened with anyone concerning the applications;

Indeed, since Alaska has such a small population the degrees of separation in connection with anyone or anything must be rationally assessed.  Not surprisingly, given this attenuation, Mr. Gallagher himself stated "it never dawned on me to call [Local] 942 or check with our apprenticeship program.  It never came to my - - it never even - - it never even popped into my mind."  Exhibit B at 7 [Gallagher Deposition 25 (line 25) to 26 (lines 1-3)].  AS&G agrees with Local 341's own assessment of the remoteness of connection.

D. <u>Here There Is No "Reasonable Impression of Partiality" Through A Link Between Milne and Local 341</u>

The applicable standard to assess the facts in a non-disclosure case is whether the non-disclosure presents a "reasonable impression of partiality."  <u>Schmitz v. Zilveti</u>, 20 F.3d 1043 (9th Cir. 1994).  There are no facts here which create such an impression.

The Laborer's apprenticeship program is not a party - directly or indirectly - to this matter.  Local 341 is but one of three local unions under the Laborer's national umbrella in Alaska (Exhibit B at 3 [Gallagher Deposition 6-7]).  The locals are Local 942 which has

Laborer's Local 341 v. AS&G A05-250                        Page 10
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

coverage for a geographic area above the 63rd parallel, including Fairbanks and Southeast Alaska; Local 71 which represents public employees; and Local 341 which has jurisdiction in Southcentral Alaska, including Anchorage. Id. The intertie between the apprenticeship program and Local 341 is limited to the participation by two Local 341 trustees on a board of directors for the apprenticeship program. Id. These officers join six other members, including two officials from Local 942 and the remainder from management. Id. The collective bargaining agreement between AS&G and Local 341 is negotiated by and is between only those two parties. Exhibit B at 9-10 [Gallagher Deposition 32-34]; Exhibit C [Affidavit of Steve Lovs]. AS&G has always bargained only for a total-dollar compensation package leaving Local 341 to allocate from that total dollar allocation. Local 341's election to commit funds to "training" (possibly but not specifically to the Fairbanks apprenticeship program) are pursuant to allocations in an "Exhibit A" attached to the collective bargaining agreement and revised annually. Exhibit C at 6-9 [Steve Lovs Affidavit, attachments 1 and 2.] However, no negotiation occurs between AS&G and the apprenticeship program. Id.

There are two apprenticeship programs, one in Anchorage and one in Fairbanks. Exhibit B at 4 [Gallagher Deposition 10-12]. Here Abraham Milne applied for the Fairbanks apprenticeship program, not the Anchorage one. As Clark Milne stated in his deposition, young Abraham preferred to work in the Fairbanks area although it was possible that as he moved on with life and success he may have moved elsewhere. Exhibit A at 5 [Milne Deposition 14-15].

Laborer's Local 341 v. AS&G A05-250            Page 11
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

Could Clark Milne have even discerned the conflict asserted by Local 341 to be a problem? Indeed, why would anyone have drawn a legally-troublesome linkage between a union local in Anchorage with an apprenticeship program in Fairbanks? Michael Gallagher couldn't find it until well after the decision had been rendered, and then he magnified his discovery in order to challenge a lost decision. Any duty Mr. Milne bore to reasonably inform himself of linkages and conflicts did not rationally include a review of his 21 year old son's efforts at gaining technical education in one of a number of programs. Clark Milne's failure to disclose Abraham Milne's activities did not constitute error because, here, he had no constructive or other knowledge that a conflict existed that he should disclose.

In <u>Schmitz v. Zilveti</u>, the Ninth Circuit considered the effect of an arbitrator not even knowing about a conflict. The court did not accept lack of knowledge as a per se defense, because it recognized there are situations where constructive knowledge or a duty to check for conflicts arises, citing for example a lawyer's duty to do a conflicts check. 20 F.3d at 1049. But, there is no specified constructive duty to look for details even Michael Gallagher of Local 341 could not find. Clark Milne simply drew no connection whatsoever between his son's failure to gain admission to a laborers apprenticeship program with Local 341. That lack of knowledge would likely have ended the inquiry in some jurisdictions because of a per se rule regarding the need for the arbitrator to know of the alleged conflict. 20 F.3d at 1048.

Laborer's Local 341 v. AS&G A05-250                Page 12
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

Indeed, what duty did Clark Milne have? No standard such as the NASD standard in Schmitz v. Zilveti or an attorney's ethics obligation existed here. The parties to this arbitration - - Local 341 and AS&G - - imposed no specific standard on Mr. Milne by either the collective bargaining agreement or with respect to this particular matter.[4] "The parties to an arbitration choose their method of dispute resolution; and can ask for no more impartiality than interest in the method they have chosen." Woods v. Saturn, 78 F.3d at 429 fn. 5 quoting Merit Ins. Co. v. Leatherby Ins. Co., 714 F.2d 673, 679 (7th Cir. 1982) cert denied 462 U.S. 1009 (1983).

The honorable court in this matter must assess the degree of connection of Abraham Milne's actions with the specific parties to this dispute, and take into account Clark Milne's own state of mind. Those factors - - in the context of Alaska's small population, reasonable human behavior, and the as-described remote linkages among union entities - - should produce a conclusion of no reasonable impression of partiality on the part of Clark Milne. The Fourth Circuit noted, by way of analysis applicable here, that AAA commercial arbitration rules did not "require potential arbitrators to disclose every

---

[4] That Mr. Milne has stated that he would comply with AAA ethics rules adds nothing to this inquiry. The AAA ethics rules do not require disclosure of a situation that does not exist: "Arbitrators serving under these rules shall have no personal or financial interest in the results of the proceedings in which they are appointed and shall have no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias." AAA National Rules for the Resolution of Employer Disputes, http://www.adr.org/sp.asp.id. In Consolidation Coal, the court based its ruling in part on its analysis that the arbitrator had not literally been bound by AAA or the arbitrators Code of Professional Responsibility. 48 F.3d at 130 fn 5.

Laborer's Local 341 v. AS&G A05-250    Page 13
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

interest or relationship with a party that could conceivably be regarded as a basis for bias. Rather it only requires disclosure of an interest or relationship 'likely to affect impartiality.'" ANR Coal Company Inc. v. Cogentrix of North Carolina, 173 F.3d 493, 498 (4th Circuit 1999).

### E. There is No Evidence of Evident Partiality.

In any event, even if Mr. Milne's failure to disclose amounted to a technical failure, there is still the requirement to factually show evident partiality. See, Consolidation Coal, 48 F.3d at 130, fn. 5. The court in Consolidation Coal provided a reasonable checklist of factors to determine evident partiality:

> (1) Any personal interest, pecuniary or otherwise, the arbitrator has in the proceeding; (2) the directness of the relationship between the arbitrator and the party he is alleged to favor; (3) the connection of the relationship to the arbitration; and (4) the proximity in time between the relationship and the arbitration proceeding.

Id. After noting these standards, the court concluded in that case that the claim of partiality based solely on the existence of the sibling relationship "is at best remote, uncertain and speculative." Id.

Under guidelines such as the foregoing, the non-disclosure concern here is so attenuated indeed it cannot rationally form a basis to find evident partiality. Moreover, had Mr. Milne carefully gone through the Consolidation Coal checklist following an inquiry from the parties to this arbitration, he still would not likely have even thought to mention his son Abraham. Fed. R. Civ. P. 56 requires the moving party to show, through admissible evidence, the absence of genuine factual disputes and entitlement to judgment. U.S. v.

Laborer's Local 341 v. AS&G A05-250                                   Page 14
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

CNA Fin. Corp., 381 F.Supp. 2d 1088 (D. Alaska 2005).  Local 341 is not entitled to summary judgment because no evidence at all has been provided to support any allegation of partiality.  Local 341 did not allege any facts to support a finding of evident partiality.

II.  **IF THE APPRENTICESHIP PROGRAM/LOCAL 341 LINK IS SO CLOSE, LOCAL 341 HAS WAIVED ITS RIGHT TO SEEK VACATUR.**

Local 341 attacks Clark Milne's non-disclosure on the premise that the apprenticeship program is openly, clearly, and factually intertwined with Local 341.  If such a nexus does not exist (see prior arguments above), the Union's arguments fail.  If for sake of argument there is such an intertwining which Mr. Milne should have spotted, then Local 341 should have spotted it, complained and objected.  Instead, Local 341 waited 115 days after delivery of the decision to file its case.[5]

Assuming that the apprenticeship program and Local 341 have a monolithic nexus, the entity with the best information to evaluate Clark Milne's role is that monolithic entity. Clark Milne didn't know of the inter-relationship; AS&G didn't either.  Of course, Mr. Gallagher himself said that it never "popped into [his] mind" to check with his supposedly close affiliates at Local 942 and the apprenticeship program.  Exhibit B at 8 [Gallagher Deposition 26].  However, Tim Sharp, business manager of Local 942 (and a trustee of the apprenticeship program) states that he had knowledge of the relationship in Fall 2004.

---

[5] Michael Gallagher remembers AS&G asking for more and better information supporting its his initial revelation of a purported problem.  The Union never responded in writing and never offered a rational explanation.  See Exhibit C [Affidavit of Steve Lovs].

Laborer's Local 341 v. AS&G A05-250                                  Page 15
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

Exhibit H to Docket 13. Daniel Simien, President of Local 942 (and a trustee of the apprenticeship program), knew of the relationship when the Steve Pope arbitration award was discussed by him and Mike Gallagher. Exhibit C to Docket 13. Thus, the consolidated monolith of laborer's interests (as Local 341 would have it) had by admission, <u>actual</u> knowledge of the father-son relationship at issue. Certainly, acceptance of Local 341's argument that there is sufficient disclosure nexus between Local 341, Local 942 and the apprenticeship program means <u>at</u> <u>least</u> that what Sharp and Simien actually knew, Mr. Gallagher also <u>at</u> <u>least</u> constructively knew and therefore waived any right to later object.

The Ninth Circuit in a constructive knowledge (as opposed to even actual knowledge) case involving an arbitration challenge found:

> Holding that the waiver doctrine applies where a party to an arbitration has constructive knowledge of a potential conflict but fails to timely object is the better approach in light of our policy favoring the finality if arbitration awards.

<u>Fidelity Federal Bank v. Durga Ma Corporation</u>, 386 F.3d 1306, 1313 (9th Cir. 2004).[6]

Michael Gallagher further emphasized a constructive knowledge of Clark Milne's father-son issue when he stated that he deferred to his counsel who serves as counsel to the state-wide council of labor unions. Exhibit B at 8 [Gallagher Deposition 26-28]. Local 341 in this case was the one party among the Union, AS&G and the arbitrator with the possible capacity to know all connections among all entities involved. It had at least

---

[6] The <u>Durga Ma</u> case should also give context to the Ninth Circuit's likely conclusions if actually presented with a failure to disclose a father-son situation such as addressed in Morelite.

Laborer's Local 341 v. AS&G A05-250                          Page 16
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

constructive knowledge of the issue now claimed to be disclosable and waived its claims by failing to pursue that matter. Certainly, Local 341 had plenty of opportunity to timely object and thereby promote a prompt, final arbitration process.

This court's own prior recognition of the importance of finality in arbitration decisions tracks the Durga Ma court's conclusions. And this court, as in Durga Ma, can and should conclude that - - if there truly is a nexus between Local 341 and the apprenticeship program sufficient to require Clark Milne to disclose his son's predicament - - then the Union has waived that claim by sitting on its constructive/actual knowledge and never objecting before the arbitration.

III.  SUMMARY JUDGMENT IS APPROPRIATE IN THE ABSENCE OF MATERIAL FACTS IN DISPUTE.

The court likely has sufficient facts before it to apply case law and rule in summary fashion in favor of defendant AS&G. AS&G's motion is premised upon (1) the attenuated relationship that young Abraham Milne's failed applications to a Fairbanks laborers apprenticeship program had to his father's consideration of an Anchorage local's dispute with AS&G and (2) waiver by Local 341 if it were to be concluded that sufficient nexus exists between Local 341 and the apprenticeship program. The legal context to be applied is the judicial restraint to be shown in overturning the parties' selected means of dispute resolution and the preference for prompt finality in those decisions. As noted by plaintiff, summary judgment under Fed. Rule Civ. P. 56 is appropriate if there are no material facts in dispute. U.S. v. CNA Fin. Corp., supra. The submitted affidavits, supporting materials,

Laborer's Local 341 v. AS&G A05-250                Page 17
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

and the deposition transcripts (including referenced documents) likely provide adequate factual support for the application of the law in favor of AS&G.

AS&G has opposed Local 341's Motion for Summary Judgment by contending that based on the facts presented, AS&G and not Local 341 is entitled to judgment. There is of course an alternative argument that AS&G, in opposition to Local 341's Motion for Summary Judgment, must make: if the law does not permit entry of judgment in AS&G's favor respecting Local 341's motion, then material facts may well be in dispute to preclude entry of judgment in Local 341's favor. The court might well consider at least these fact areas to be in dispute and therefore triable issues of fact:

(1) Do the inter-relationships between Local 341 in Anchorage and the apprenticeship program in Fairbanks constitute a nexus of interests giving rise to a disclosable potential conflict?

(2) With respect to an alleged nexus between Local 341 and the apprenticeship program, does ultimate receipt by the apprenticeship program of some money paid by AS&G as compensation under the collective bargaining agreement establish any nexus between Local 341/AS&G and the apprenticeship program; and if so, is this nexus, however attenuated, sufficient to create a disclosure issue for Clark Milne?

(3) Could Clark Milne reasonably have known that a disclosable nexus existed between his son's failed applications and the dispute in Anchorage?



Laborer's Local 341 v. AS&G A05-250　　　　　　　　Page 18
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

(4) Did Clark Milne's minimal involvement with and awareness of his son's applications to the apprenticeship program nevertheless trigger a sufficient actual knowledge to require disclosure at the risk of violating any applicable disclosure canons?

(5) Are Local 341's objections to Clark Milne credible given the lack of responsiveness to AS&G regarding the allegations of conflict?

With respect, defendant AS&G believes that the law applied to the facts permits entry of judgment in its favor. Alternatively AS&G proffers the foregoing potential factual disputes to be resolved.

## Conclusion

For the reasons set forth in this brief, defendant AS&G requests entry of summary judgment in its favor dismissing the complaint.

DATED at Anchorage, Alaska this 13th day of February, 2006.

        Wohlforth, Johnson, Brecht,
        Cartledge & Brooking
        Attorneys for Defendant
        Anchorage Sand and Gravel Co., Inc.

        s/Robert M. Johnson
        900 W 5th Avenue, Suite 600
        Anchorage, AK 99501
        Phone: (907) 276-6401
        Fax: (907) 276-5093
        Email: rjohnson@akatty.com
        Alaska Bar ID No. 7410086

Laborer's Local 341 v. AS&G A05-250        Page 19
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd

## Certificate of Service

I hereby certify that on February 13, 2006, a copy of foregoing Memorandum in Support of Cross Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment was served electronically on Heidi Drygas and Kevin Dougherty.

                                                  s/Robert M. Johnson

Laborer's Local 341 v. AS&G A05-250                             Page 20
Memorandum in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Memo in Support of Cross Motion.wpd