Heidi Drygas, Esq.
Kevin Dougherty, Esq.
2501 Commercial Drive
Anchorage, AK 99501
(907) 276-1640
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA AT ANCHORAGE

LABORERS LOCAL 341,

Plaintiff,

v.

ANCHORAGE SAND AND GRAVEL COMPANY, INC.,

Defendant.

Case No. A05-250 CV (JWS)

PLAINTIFF'S OPPOSITION TO
DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

Parties receive a fair arbitral hearing only when an arbitrator fully discloses all facts which may indicate a conflict of interest prior to the hearing. Indeed, the law vigilantly protects the arbitration process with this disclosure principle. Defendant Anchorage Sand and

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

Gravel's (AS&G) attempts to "downgrade" the seriousness of a non-disclosure fail: a non-disclosure taints the arbitral process and thus the integrity of arbitration suffers. Likewise, defendant's attempt to dismiss the significant relationship between a father and son fails as a matter of law. Laborers Local 341 (also referred to as "the Union") has shown that due to both (1) the relationship between the Laborers locals in Alaska and the statewide apprenticeship program, and (2) the arbitrator's son's failed attempts to gain admittance into the apprenticeship program, the parties were deprived of their opportunity to decide for themselves whether Arbitrator Milne could neutrally preside over their dispute.

## I. **Breach of the Duty of Full Disclosure**

### A. In Non-Disclosure Cases, the Integrity of the Process is at Stake

Arbitrator Milne's duty of full disclosure required him to disclose to the parties that his son had twice failed to be selected for the Laborers Apprenticeship Program. In an action to vacate for failure to disclose a potential conflict of interest, the underlying decision of

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

the arbitrator is irrelevant. Woods v. Saturn Distribution Corp., 78 F.3d 424, 427 (9th Cir. 1996). Additionally, since the party seeking to vacate the award is not claiming "actual bias," the standard for vacating an arbitration decision in a non-disclosure case is much less demanding. Schmitz v. Zilveti, 20 F.3d 1043, 1047 (9th Cir. 1994). This is because "the integrity of the process by which arbitrators are chosen is at issue" in a non-disclosure action. Id.

Courts recognize the great amount of power and influence an arbitrator wields. In fact, the Supreme Court has stated that safeguarding impartiality is more critical in the arbitral forum than the judicial forum, since arbitrators "have completely free rein to decide the law as well as the facts and are not subject to appellate review." Commonwealth Coatings Corp. v. Continental Casualty Co., et al., 393 U.S. 145, 149 (1968). It is the finality of arbitration which compels courts to protect the arbitral process and thus closely review any non-disclosure which implicates a conflict.

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

Far from the defendant's characterization of the issue, failing to disclose information that may pose a conflict of interest is not a "simple" matter based on a "mere technicality."[1] An arbitrator's duty of full disclosure is a substantive duty imposed by the courts to protect the integrity of the arbitral process. That Laborers Local 341 seeks to vacate Arbitrator Milne's decision based on his non-disclosure of information, as opposed to claiming that he was "actually biased" in his decision, is no less a reason to vacate the award. When an arbitrator fails to disclose critical information which implicates a conflict of interest, as is the case here, the arbitration is *tainted*. The parties lose their opportunity to control the arbitral process. This aspect of the analysis is critical due to the finality of arbitration awards.

In Schmitz v. Zilveti, the Ninth Circuit court held that the parties, as opposed to the arbitrator, should be the judge of the arbitrator's impartiality since the parties "are the architects of their own arbitration

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

---

[1] See Defendant's Cross Motion for Summary Judgment at 5.

process." 20 F.3d 1043, 1049 (9th Cir. 1994). The Schmitz court declined to adopt a rule which would require that "no reasonable impression of partiality can be found absent a showing that the arbitrator knew the facts on which it is based." Id. The court went on to hold:

> If the parties are to be judges of the arbitrators' partiality, duties to investigate and disclose conflicts must be enforced, *even if later a court finds that no actual bias was present.*

Id. (emphasis added). As the Ninth circuit reasoned in Schmitz, Laborers Local 341 is not requesting an inquiry into whether Mr. Milne was biased in the arbitration. Rather, the Union argues that Mr. Milne had two duties: first, to investigate the matter of his son's failed attempts into the Laborers Apprenticeship Program; and second, to disclose the fact to the parties prior to the hearing. That Mr. Milne claims it did not occur to him to reveal his son's rejection from the Laborers Apprenticeship Program is far from dispositive of the issue. A court must employ an objective "reasonable person" standard in determining "evident partiality." See McNaughton & Rodgers, et al. v. Besser, 932 P.2d 819, 822 (Colo. 1996) ("[A]rbitrators have a duty to disclose any potential



conflict which could constitute evident partiality-- that is, a relationship which would persuade a *reasonable person* that the arbitrator is likely to be partial to one side in the dispute.")(emphasis added). Thus, the subjective views of the arbitrator are not controlling.

Defendant's dismissive characterization of the arbitration hearing at issue (claiming that the parties "short-circuited" the arbitration process set forth in the parties collective bargaining agreement)[2] is merely an attempt by the defendant to minimize the importance of this arbitration to the parties. The fact that the parties chose an expedited arbitral process in no way diminishes the legal requirement of full disclosure by the arbitrator or a party's right to a neutral arbitration. As previously stated, an arbitrator's duty of full disclosure is mandated by the courts.

B. Evident Partiality

Evident partiality exists when "undisclosed facts show 'a reasonable impression of partiality.'" Schmitz, 20 F.3d at 1046, quoting Middlesex Mut. Ins. Co. v. Levine,

[2] See Defendant's Cross Motion for Summary Judgment at 5.



HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

675 F.3d 1197, 1201 (11th Cir. 1982). The Union contends that the undisclosed fact that Arbitrator Milne's son, Abraham Milne, had twice been rejected from the Laborers Apprenticeship Program shows a 'reasonable impression of partiality' sufficient to require a vacatur of the arbitration award.

The facts which implicate a conflict of interest are not in dispute. Arbitrator Milne's son is Abraham Milne, who unsuccessfully applied on two occasions to the Laborers Apprenticeship Program in Fairbanks. (Milne Deposition at pp. 21-22, 25, attached as Exh. A) At both times he applied, Abraham lived with his father. (Milne Deposition at pp. 22, 25) Abraham first applied in June 2004, and Arbitrator Milne encouraged his son to apply. (Milne Deposition at p. 22) Arbitrator Milne was also aware that his son was not selected for the program. (Milne Deposition at p. 14) On August 17, 2004, Arbitrator Milne recalled having a conversation with Tim Sharp, business manager of Laborers Local 942 in Fairbanks, where Milne introduced his son to Mr. Sharp and mentioned that he had applied to the apprenticeship program. (Milne

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

Deposition at pp. 18-20, 22, 24) Mr. Sharp stated in his affidavit, which Arbitrator Milne acknowledged is accurate, that he suggested Mr. Milne encourage Abraham to reapply to the apprenticeship program. (Aff. of Tim Sharp at ¶ 6, attached as Exh. H to Plaintiff's Motion for Summary Judgment; Milne Deposition at p. 23) Abraham reapplied to the Laborers Apprenticeship Program in May 2005. (Milne Deposition at p. 25) As he did before, Arbitrator Milne encouraged his son to apply the second time. (Milne Deposition at p. 25) Arbitrator Milne accepted his appointment as arbitrator on June 7, 2005, a mere month after his son applied to the apprenticeship program. (E-mail Correspondence Between Robert Johnson and Clark Milne at p. 1)

Arbitrator Milne was aware that his son applied to a "Laborers" program, as opposed to another union's apprenticeship program. Mr. Milne is familiar with persons associated with the Laborers Union, though he may not recall them by name. (Milne Deposition at p. 20) Arbitrator Milne was clearly on notice that a Laborers Union local was a party to the arbitration. In an email to

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

the parties, Arbitrator Milne advised that he had no conflicts of interest with "*the Laborers Union*, Local 341, AS&G, these organizations' employees, or [the grievant]." (E-mail Correspondence Between Robert Johnson and Clark Milne at p. 1, attached as Exh. A to Plaintiff's Motion for Summary Judgment) (emphasis added). But Mr. Milne was not aware that there was more than one Laborers Union local in the State of Alaska. (Milne Deposition at p. 9) As far as he was aware, the Laborers Union in Alaska was a statewide organization. This fact alone compelled him to reveal to the parties his sons failed attempts into the Laborers Apprenticeship Program.

The importance of Morelite Construction Corp. v. New York City District Council of Carpenters Benefits Funds cannot be understated. In Morelite, the arbitrator failed to disclose that his father was the president of the international union whose local was involved in the arbitration. 748 F.2d 79, 81 (2d Cir. 1984). In vacating the arbitrator's award for the union, the court stated:

> [W]ithout knowing more (about the father-son relationship), we are bound by our strong feeling that sons are more often than not loyal to their fathers, partial to their fathers, and biased on

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

> behalf of their fathers. We cannot in good conscience allow the entering of an award grounded in what we perceive to be such unfairness.

Id. at 84. The court went on to state that while the "list of familial or other relationships that will result in the *per se* vacation of an arbitration award" would be very short, that list would include the father-son relationship at issue. Id. at 85. Just as the court found in Morelite, there exists an inherent loyalty between a father and a son. The facts demonstrate that Clark Milne was involved in his son Abraham's life and encouraged Abraham to better himself by applying to the Laborers Apprenticeship Program. Certainly no one faults Mr. Milne for aiding his son in this endeavor. Mr. Milne's fault lies in the failure to discuss this matter with the parties prior to arbitrating their dispute.

The truth is that strong ties exist among the two Laborers construction locals in Alaska and the Laborers Apprenticeship Program. The Laborers Apprenticeship Program is operated by the Alaska Laborers Training School, a statewide organization with two locations: Anchorage and

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

Fairbanks. (Gallagher Deposition at pp. 10-11, attached as Exh. B). Les Lauinger is the Training Director for both locations. (Gallagher Deposition at p. 18). Apprentices often travel between locations in order to receive a full education. (Gallagher Deposition at p. 12). The leadership of both Laborers Locals 341 in Anchorage and 942 in Fairbanks sit as trustees on the Alaska Laborers Training Trust Fund. (Gallagher Deposition at pp. 36-37).[3] As construction locals, Locals 341 and 942 belong to the same pension trust fund, health and welfare fund, and statewide training and apprenticeship fund. (Gallagher Deposition at p. 8). In addition, both Locals 341 and 942 belong to the Alaska District Council of Laborers, which is the statewide council for the three Alaska locals of the Laborers International Union of North America.[4] (Gallagher Deposition at p. 7).

---

[3] The truth is that strong ties exist between the Laborers Apprenticeship Program and the Alaska Laborers locals, both on a statutory level and a practical level. The Laborers Apprenticeship Program is a Taft-Hartley trust fund operated by the Alaska Laborers Training Trust and must (by definition) be closely affiliated with the union. See 29 U.S.C. § 186(c).

[4] The third local is Public Employees Local 71. Curiously, Mr. Milne attended an arbitration between Local 71 and the Alaska Department of Labor (DOT) on July 19, 2005. (Milne Deposition at p. 30) Mr. Milne stated that he was "hoping to stay through the hearing to aid the D.O.T. in terms of evaluation and hearing the points being raised in the arbitration." (Milne Deposition at p. 31) At that time, he was

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

Evident partiality analysis employs an objective "reasonable person" standard. ANR Coal Vo., Inc. v. Cogentrix of North Carolina, Inc., 173 F.3d 493, 501 (4th Cir. 1999). The Union's burden is to prove that the undisclosed facts implicate a "reasonable impression of partiality." In light of Arbitrator Milne's relationship with his son, his son's failed attempts into a Laborers program, and the interrelation of the Laborers Union organizations in Alaska, it is reasonable for a person to conclude that the undisclosed facts implicate bias or partiality on behalf of Arbitrator Milne.

Mr. Gallagher may have said it best when he stated: "I'm a parent just like any other parent. I'm a very protective person with my children, and I believe most people are." (Gallagher Deposition at p. 41). To the Union's credit, it has never initiated an action to vacate an arbitration award in its very long history of arbitrating disputes. (Gallagher Deposition at p. 40).

---

aware that the DOT was opposing a Laborers Union local. (Milne Deposition at p. 31) Laborers Local 341 suggests that this is a rather partisan step for a person who holds himself out to be a neutral arbitrator.

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

The Union has both won and lost arbitrations in the past, and has fully accepted those decisions. Yet the Union felt that there was something inherently wrong in Arbitrator Milne's failure to disclose that his son had been rejected twice from the Laborers statewide program for apprentices. The courts agree that an undisclosed fact which leaves "a reasonable impression of partiality" sufficiently taints the arbitral process to require a vacatur of the arbitration award. Laborers Local 341 contends that based on the facts it has presented before this court, it has shown that evident partiality exists in this case.

## II. The Burden to Investigate and Disclose Potential Conflicts of Interest Rests with the Arbitrator and Not the Parties

### A. An Arbitrator Has a Duty to Investigate and Disclose Potential Conflicts

An arbitrator has a duty to investigate the existence of potential conflicts of interest prior to commencing an arbitral hearing. In Schmitz v. Zilveti, parties to a securities dispute submitted their case to a three-member arbitration panel. Id. at 1044. After the panel submitted a decision and award to the parties, the

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

losing party discovered that a member of the arbitration panel was employed by the law firm representing the parent company of the successful party. Id. In finding "evident partiality" and vacating the award, the court held that while the arbitrator did not appear to have actual knowledge of the conflict, the arbitrator had a "duty to investigate the conflict at issue." Id. at 1049. The Court concluded that "parties can choose their arbitrators intelligently only when facts showing potential partiality are disclosed." Id. at 1047.

Similar to the holding in Schmitz, Arbitrator Milne should have further investigated whether arbitrating a case involving a Laborers Union local conflicted with his son's failed admittance into the Laborers Apprenticeship Program. Mr. Milne was aware that his son had applied to the Laborers Apprenticeship Program, and in fact encouraged him to do so on two separate occasions. (Milne Deposition at pp. 21-22, 25) Mr. Milne was not even sure if multiple locals of the Laborers Union existed in Alaska. (Milne Deposition at p. 9) In fact, as far as he was aware there may have been only one Laborers Union local in the state of

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

Alaska. This fact alone should have compelled him to investigate the matter further and disclose this conflict. The onus is placed upon the arbitrator, and not the parties, to make the necessary disclosures regarding his own relationships that may create a conflict of interest.

B. AS&G's Misguided Theory of "Waiver of the Unknown" Lacks Both Legal Foundation and Common Sense

AS&G's reliance on Fidelity Federal Bank v. Durga Ma Corp., 386 F.3d 1306 (9th Cir. 2004) is misplaced. In fact, it is the only case AS&G relies upon for its "waiver" argument. In Durga Ma, the parties' Agreement provided for a panel of three arbitrators to decide a dispute. Id. at 1308. Each party selected their own arbitrator, and in turn the two arbitrators selected a neutral third arbitrator to sit on the panel. Id. The panel eventually ruled in favor of Durga Ma. Id. at 1309. Before the panel had ruled on the issue of attorneys' fees, Fidelity discovered that Durga Ma's selected arbitrator had familial ties to two attorneys of the law firm representing Durga Ma in the arbitration. Id. at 1309-10. One of the attorneys was representing Durga Ma in the actual arbitration. Id.

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

at 1310. Fidelity moved to vacate the arbitration award, claiming evident partiality on the part of Durga Ma's selected arbitrator. Id.

The Court disagreed with Fidelity. It held that because each party selected their own arbitrator, Fidelity was on notice that the arbitrator may have "some personal or professional connection to Durga Ma or its attorneys." Id. at 1313. Additionally, the Court noted that the parties never required the party-appointed arbitrators to compose disclosure statements. Id.

Contrary to Durga Ma, AS&G and Laborers Local 341 jointly selected one arbitrator, Clark Milne, to neutrally preside over their dispute. The court's reasoning behind its decision in Durga Ma simply does not apply to the facts of this case. The Court in Durga Ma held that Fidelity had constructive knowledge of a potential conflict because it was on notice that a party-appointed arbitrator may have connections to that party. Therefore, Fidelity waived its right to object. Yet in the present case before this court, there were no party-appointed arbitrators. One

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

arbitrator was tapped to preside over the parties' dispute. Additionally, full disclosure was required of the arbitrator and both parties. Prior to the hearing, Arbitrator Milne was required to fully investigate and disclose any potential conflicts of interest. In this regard, Mr. Milne failed. Because there were no party-appointed arbitrators as there were in Durga Ma, the court's logic in finding constructive knowledge does not carry over to the facts of this case. By extension, Laborers Local 341 cannot be deemed to have had constructive knowledge of a potential conflict.

If AS&G's argument were correct, Mr. Gallagher would have had a duty to discover whether Arbitrator Milne had any children. He would then have been required to ask Arbitrator Milne whether those children were either members of the Laborers Union or had applied for enrollment into the Laborers Apprenticeship Program. However, the law does not place these burdens on the party. There exist sound reasons why the burden rests with the arbitrator to make these types of disclosures; namely, that only the arbitrator is in a position to know whether he has any

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

children enrolled in the apprenticeship program. The only reason Mr. Simien told Mr. Gallagher that Arbitrator Milne's son had applied to the Laborers Apprenticeship Program was because Mr. Simien recognized the last name. (See Aff. of Mike Gallagher at ¶ 6, attached as Exh. B to Plaintiff's Motion for Summary Judgment). Under AS&G's argument, if Mr. Milne's son had a different last name, Laborers Local 341 would still have had a duty to discover whether Mr. Milne had any children and by extension whether those children had applied to the apprenticeship program. As is quite apparent, AS&G's position is illogical and is unsupported by sound legal argument or principle. For these reasons, Durga Ma is inapposite.

HEIDI L. DRYGAS
ATTORNEY AT LAW
2501 COMMERCIAL DRIVE, SUITE 140
ANCHORAGE, ALASKA 99501
(907) 276-1640

## Conclusion

As the Schmitz court held, "parties can choose their arbitrators intelligently only when facts showing potential partiality are disclosed." Id. at 1047. An arbitrator's legal duty of full disclosure must be respected and enforced. For the reasons stated herein, Plaintiff respectfully requests that this court DENY defendant's Cross Motion for Summary Judgment. Plaintiff respectfully requests that this court GRANT Plaintiff's Motion for Summary Judgment and VACATE the arbitration award.

DATED at Anchorage, Alaska this 27th day of February, 2006.

Attorneys for
Laborers Local 341

s/Heidi Drygas
2501 Commercial Drive
Anchorage, AK 99501
Phone: (907) 276-1640



Fax: (907) 274-7289
Email: hld@acsalaska.net
Alaska Bar No. 0311075

s/Kevin Dougherty
2501 Commercial Drive
Anchorage, AK 99501
Phone: (907) 276-1640
Fax: (907) 274-7289
Email: kbd@acsalaska.net
Alaska Bar No. 811086

Certificate of Service

I certify that a copy of this document was electronically served this 27th day of February, 2006 to:

Robert Johnson, Esq.
900 W. 5th Ave., Suite 600
Anchorage, AK 99501

s/Heidi Drygas

