Robert M. Johnson
Wohlforth, Johnson, Brecht, Cartledge & Brooking
900 West 5th Avenue, Suite 600
Anchorage, Alaska 99501
(907) 276-6401

Attorneys for Defendant
Anchorage Sand & Gravel Co., Inc.

# UNITED STATES DISTRICT COURT

# DISTRICT OF ALASKA

| | |
|---|---|
| LABORERS LOCAL 341 | ) |
|     Plaintiff, | ) |
| vs. | ) Case No. A05-250 CV (JWS) |
| ANCHORAGE SAND AND GRAVEL COMPANY, INC., | ) |
|     Defendant. | ) |

## REPLY IN SUPPORT OF DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

With all respect, the Union's opposition to the Cross Motion for Summary Judgment filed by Anchorage Sand & Gravel Company, Inc. ("AS&G") is flawed as to case law and facts presented to the court. This brief will address, <u>first</u>, the proper context for assessing "evident partiality" and, <u>second</u>, the Union's waiver of objections to the arbitration decision.

Laborer's Local 341 v. AS&G A05-250          Page 1
Reply in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Reply in Support of Cross Motion.wpd

**Wohlforth | Johnson | Brecht Cartledge | Brooking**
A PROFESSIONAL CORPORATION
900 WEST 5TH AVENUE, SUITE 600
ANCHORAGE, ALASKA 99501-2048
Phone: 907.276.6401    Fax: 907.276.5093
www.akatty.com

## ARGUMENT

**I.    The Union has failed, as a matter of case law and fact, to demonstrate evident partiality.**

    A.    <u>The Union ignores the context of case law.</u>

"A trivial relationship, even if undisclosed, will not justify vacatur of an arbitration award." <u>ANR Coal Co., Inc. v. Cogentrix of North Carolina</u>, 173 F.3d 493, 502 (4th Cir. 1999). Arbitrator Clark Milne's adult son's unsuccessful applications with a laborers apprenticeship program have a trivial relationship to this case. Legal context applied in this matter underscores the triviality of that alleged relationship to the challenged arbitration.

That Mr. Milne has a son is material and relevant to these proceedings only if something more than an extremely attenuated contact exists between the son on one hand and the plaintiff on the other. Here that did not occur. In the often cited case, <u>Morelite Construction v. NYC District Council of Carpenters</u>, 748 F.2d 79, 80-81 (2d Cir.1984), the court assessed a situation where the son was the arbitrator and the father had a clear, material a relationship with a party to the lawsuit: the father was the president of the entity affiliated with one of the parties and an officer of that party. There is no conceivable parallel between that situation and the current situation. Here, the arbitrator's son is simply an unsuccessful applicant with a trivial connection to the plaintiff; particularly where Mr. Milne

**Wohlforth | Johnson | Brecht Cartledge | Brooking**
A PROFESSIONAL CORPORATION
900 WEST 5TH AVENUE, SUITE 600
ANCHORAGE, ALASKA 99501-2048
Phone: 907.276.6401   Fax: 907.276.5093
www.akatty.com

Laborer's Local 341 v. AS&G A05-250                  Page 2
Reply in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Reply in Support of Cross Motion.wpd

himself gave no particular thought or involvement to his son's application or the lack of success in the application or with parties in interest. Exhibit A[1] at 8 [Milne Deposition, 28-29].

The <u>Morelite</u> case, which formed the basis for Ninth Circuit analysis in <u>Schmitz v. Zilveti</u>, 20 F.3d 1043 (9th Cir. 1994), adopted no per se rule regarding fathers and sons. Despite the plaintiff's mistaken characterization, the <u>Morelite</u> court said that, <u>if</u> it were required to adopt a per se rule, the list would indeed be short and that fathers and sons might well appear on it. 748 F.2d at 85. But even a per se rule regarding fathers and sons would necessarily require a linkage between an arbitrator being one half of that couple and the other half having something other than a "trivial" relationship with one of the parties. This is so, because the court must find that a reasonable person must "conclude that an arbitrator was <u>partial to the other side</u> in arbitration [emphasis added]." <u>Cogentrix</u>, <u>supra</u>, 173 F.3d at 500. It is demonstration of a relationship with the litigating party which is critical. Here the relationship between Abraham Milne, the arbitrator's son, and plaintiff in this situation is so attenuated as to be invisible. It was invisible to Mr. Milne who as the Union indicated was "an honest person." Exhibit B at [Gallagher Deposition 40, Line 25].

The plaintiff does not argue actual bias, but argues for an impression of partiality. But the Union erroneously describes that standard when it states "a court must employ an <u>objective</u> [emphasis in plaintiff's brief] 'reasonable person' standard in determining 'evident

---

[1] References to Exhibits A and B (the depositions of Clark Milne and Mike Gallagher) are to those exhibits attached to AS&G's Memorandum in Support, Docket 22.

Laborer's Local 341 v. AS&G A05-250                                  Page 3
Reply in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Reply in Support of Cross Motion.wpd

**Wohlforth | Johnson | Brecht Cartledge | Brooking**
A PROFESSIONAL CORPORATION
900 WEST 5TH AVENUE, SUITE 600
ANCHORAGE, ALASKA 99501-2048
Phone: 907.276.6401   Fax: 907.276.5093
www.akatty.com

partiality.' See, McNaughton and Rodgers v. Besser, 932 P.2d 819, 822 (Colo. 1996 [sic: should be "Colo. App. 1996])."  Opposition Brief at 5.  The plaintiff misquotes and mis-cites the Colorado case, because the Colorado intermediate court did not reference an objective standard and does not even use the word "objective" in its decision.  Rather, the Colorado court looked to the facts just as the court in Cogentrix, Morelite and Schmitz did in ascertaining whether, on the facts presented, a reasonable person would likely conclude that partiality existed.  That context also requires this court to assess what a reasonable person would ascertain if the person knew the arbitrator's son had been an unsuccessful candidate in an apprenticeship training program with an attenuated linkage to Local 341, the plaintiff in this matter, and no linkage to the controversy at issue.

The Colorado court cited by plaintiff also concluded that while arbitrators have a duty to disclose, that duty is with respect to "relationships which would persuade a reasonable person that the arbitrator is likely to be partial to one side in the dispute . . . evident partiality has been found when a reasonable person would have to conclude that an arbitrator would be predisposed to favor one party to the arbitration."  932 P.2d at 812, citing Morelite.  This is consistent with Cogentrix which did not require disclosure of trivial relationships.  See also, Positive Software Solutions, Inc. v. New Century, __ F.3d ___ 2006 WL 2276 (text prior to fn 4) (5th Cir. 2006); University Commons-Urbana Ltd. v. Universal Construction, 304 F.3d 1331, 1339 (4th Cir. 2002), ["The partiality alleged must be direct, definite and capable of demonstration rather than remote, uncertain and speculative."]

Laborer's Local 341 v. AS&G A05-250               Page 4
Reply in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Reply in Support of Cross Motion.wpd

Wohlforth | Johnson | Brecht Cartledge | Brooking
A PROFESSIONAL CORPORATION
900 WEST 5TH AVENUE, SUITE 600
ANCHORAGE, ALASKA 99501-2048
Phone: 907.276.6401   Fax: 907.276.5093
www.akatty.com

Both parties cite <u>Cogentrix</u>. In its opposition brief (at p 12), once again Local 341 skews the court's reference to an "objective" standard, because the <u>Cogentrix</u> court concluded that:

> . . . a party seeking vacatur must put forward facts that <u>objectively</u> [emphasis in original] demonstrates such a degree of partiality that a reasonable person could assume that the arbitrator had improper motives. The movement carries a heavy burden in order to meet this "onerous" standard. [Citations omitted.]

173 F.3d at 501.

There can no reasonable conclusion that Mr. Milne would be partial to AS&G as a consequence of the circumstances which plaintiff describes. As already noted, "A trivial relationship, even if undisclosed will not justify vacatur of an arbitration award." <u>Cogentrix</u>, 173 F.3d at 502.

B.   <u>The Union misconstrues the facts of this case.</u>

A reasonable person's assessment of partiality must look to whether there is a likelihood by arbitrator Milne to rule against a party. Where is there evidence of that here? Local 341 asserts this will arise because "strong ties" exist among the laborers locals and the apprenticeship program. Opposition Brief at 10. But Local 341's depiction is inaccurate. AS&G can actually be depicted alongside Local 341 as at least an equal target of partiality. Of eight trustees governing the apprenticeship program, four are from <u>management</u> and only two from plaintiff here. Exhibit B at 3 [Gallagher Deposition 8-9]. As such, Mr. Milne's beef with the apprenticeship program, if he ever had one, could be better described as running

**Wohlforth** | **Johnson** | **Brecht**
**Cartledge** | **Brooking**
A PROFESSIONAL CORPORATION
900 WEST 5TH AVENUE, SUITE 600
ANCHORAGE, ALASKA 99501-2048
Phone: 907.276.6401   Fax: 907.276.5093
www.akatty.com

Laborer's Local 341 v. AS&G A05-250                   Page 5
Reply in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Reply in Support of Cross Motion.wpd

against the management - - AS&G's role - - side in the arbitrated dispute. When the governing board of the apprenticeship program is one-half management and only one quarter of representatives of the plaintiff, how is partiality against the plaintiff to be presumed? Second, the apprenticeship program is factually removed from the plaintiff by several orders of separation: lack of controlling relationships (trustees as previously noted); geography (Anchorage versus Fairbanks); dispute type (an employment dispute versus a unrelated application process); and nexus (father as arbitrator, adult son with an independent career path and agenda).

Not surprisingly, Michael Gallagher, principal of the Union whose shop steward's termination was upheld by Mr. Milne, belatedly contends that had he known of Abraham Milne's lack of success that he would have not selected Clark Milne as an arbitrator. Exhibit B at 11-12 [Gallagher Deposition at 41-42]. While few would dispute that a father will most likely look after a son, looking after a son has to be given some context. Here Clark Milne made no particular note of his son's lack of success with the apprenticeship program but simply knew of it; Mr. Milne took no action to assist in any appeal or protest; Mr. Milne knew of the 2004 lack of success but could not even remember when or if he had heard of the 2005 incident in terms of it occurring before or after the arbitration award. See analysis in AS&G's Memorandum in Support (Docket 22).

Did Mr. Milne draw a linkage between the apprenticeship program and the plaintiff? He has said he did not. Exhibit A at 8 [Milne Deposition 28-29]. Local 341 does not dispute

**Wohlforth | Johnson | Brecht Cartledge | Brooking**
A PROFESSIONAL CORPORATION
900 WEST 5TH AVENUE, SUITE 600
ANCHORAGE, ALASKA 99501-2048
Phone: 907.276.6401   Fax: 907.276.5093
www.akatty.com

Laborer's Local 341 v. AS&G A05-250                          Page 6
Reply in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Reply in Support of Cross Motion.wpd

that statement. Moreover, it is important to note that the Union does not dispute AS&G's contention Mr. Milne has never admitted a legal <u>need</u> to disclose the relationship. <u>See</u>, AS&G Memorandum in Support (Docket 22) at 7, citing Exhibit A at 10 [Milne Deposition 33-34]. Mr. Milne submitted in evident good faith a statement of his qualifications and lack of conflicts. That he might/could/or should have drawn the connection that the apprenticeship program was linked to the "laborers" generally does not give rise to linkage between a particular local of the laborers and laborers generally or the apprenticeship program in particular. Plaintiff cites one line in the deposition for the proposition that Mr. Milne was not aware of more than one local in Alaska. See Opposition Brief at 14, citation to Milne deposition (Exhibit A at 3 [Milne Deposition 9]). However, the plaintiff fails to cite to Mr. Milne's more circumspect assessment later in his deposition:

> Q. You don't know do you what relationship, if any, exists between the apprenticeship program of Laborers and a particular local of the Laborers, do you?
> A. I don't. I don't follow that.
> Q. Do you think there is any relationship between the apprenticeship program and the local that might exist in Kentucky?
> A. I don't know. I know our unions need capable Alaskan workers so I assume there is a connection between them, but I don't honestly know.
> Q. Do you understand that there are a number of locals affiliated with the Laborer's Union?
> A. Yes. Hundreds, all over the country, yes.
> Q. And is it your understanding that there is a local in Fairbanks, a separate local from the Local 341 in Anchorage?
> A. Yes. That was my remembrance, my impression. I know the Carpenters have it split by parallel and I can't remember if the Laborers are a split local or not. I don't know.

**Wohlforth | Johnson | Brecht Cartledge | Brooking**
A PROFESSIONAL CORPORATION
900 WEST 5TH AVENUE, SUITE 600
ANCHORAGE, ALASKA 99501-2048
Phone: 907.276.6401    Fax: 907.276.5093
www.akatty.com

Laborer's Local 341 v. AS&G A05-250                Page 7
Reply in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Reply in Support of Cross Motion.wpd

Exhibit A at 10 [Milne Deposition 34-35]. Mr. Milne's reference to a "split local" probably acknowledges that either he knew of several locals or that the Fairbanks local is itself split into two geographic areas: (a) Alaska north of the 63rd parallel and (b) parts of Southeast Alaska. Exhibit B at 3 [Gallagher Deposition 6].

The Fourth Circuit in <u>Cogentrix</u> relied upon a four point test adopted from the <u>Consolidation Coal</u> case (previously noted in AS&G's brief in support of cross motion):

> (1) the extent and character of the personal interest, pecuniary or otherwise, of the arbitrator in the proceeding; (2) the directness of the relationship between the arbitrator and <u>the party he is alleged to favor</u>; (3) the connection of that relationship to the arbitration; and (4) the proximity in time between the relationship and the arbitration proceeding.

173 F.3d at 500 [emphasis added]. How would the circumstances in this instance situation fare under such an analysis? <u>First</u>, the extent and character of the personal interest of the arbitrator shows that Mr. Milne is an honest person without a grievance against the Union; his son's unsuccessful application was not with the party in interest. <u>Second</u>, the directness in the relationship between either of the Milnes and AS&G, the party Clark Milne is alleged to favor, is strained to the limits of credulity. No hint of partiality to AS&G follows from young Milne's unsuccessful attempts to gain admission to an apprenticeship program in Fairbanks. AS&G is in Anchorage; AS&G's dispute is with the local not with the apprenticeship program; no evidence whatsoever exists that animosity exists between the arbitrator and the apprenticeship program itself relating to his son's unsuccessful attempts for admission. <u>Third</u>, the connection between the son's rejection from the apprenticeship program and the arbitration

**Wohlforth | Johnson | Brecht Cartledge | Brooking**
A PROFESSIONAL CORPORATION
900 WEST 5TH AVENUE, SUITE 600
ANCHORAGE, ALASKA 99501-2048
Phone: 907.276.6401   Fax: 907.276.5093
www.akatty.com

Laborer's Local 341 v. AS&G A05-250                         Page 8
Reply in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Reply in Support of Cross Motion.wpd

issues themselves do not exist given that the apprenticeship program is not the same as the local and that indeed there is a greater role for management than there is by plaintiff in governing the apprenticeship program. And <u>fourth</u>, as to proximity and time, the evidence indicates that it was nearly a year prior to appointment to the arbitration that arbitrator Milne acquired knowledge regarding the failure to obtain admission to the apprenticeship program in 2004; no evidence exists that Mr. Milne knew of the second unsuccessful attempt at any time prior to issuance of the arbitration award.

C. <u>The parties did not set a standard of disclosure for the arbitrator which would have required the disclosure sought by the Union.</u>

The Union seeks disqualification of the arbitrator - - long after the arbitration decision was rendered - - on the basis of a challenge which shows no relevant relationship or connection. Although the arbitrator had a relationship with his son, neither the arbitrator nor his son had a relationship or any other connection with either party at the time of the arbitration. The plaintiff would seem to create a new standard for conflict of interest that would require disclosure of non-existent relationships or connections based upon an extreme rendition of relationships found in Alaska.

But the parties here did not set a such a new standard or any other specific standard requiring the disclosure of Abraham Milne's relationship with the apprenticeship program. The parties did not impose a particular disclosure duty to Mr. Milne, such as might apply to lawyer or in a NASD case; indeed the parties utilized an informal process which did not even involve

**Wohlforth | Johnson | Brecht Cartledge | Brooking**
A PROFESSIONAL CORPORATION
900 WEST 5TH AVENUE, SUITE 600
ANCHORAGE, ALASKA 99501-2048
Phone: 907.276.6401   Fax: 907.276.5093
www.akatty.com

Laborer's Local 341 v. AS&G A05-250           Page 9
Reply in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Reply in Support of Cross Motion.wpd

the American Arbitration Association.[2]  Courts have consistently declined to apply disclosure duties not adopted by the parties.  Woods v. Saturn Dist. Corp., 78 F.3d 424, 429 (9th Cir. 1996).

### II. Waiver applies in this situation.

AS&G has also moved for dismissal of this case on the grounds that, if there indeed was sufficient nexus between the apprenticeship program and Local 341 to support a claim of partiality, then the plaintiff in this matter had constructive knowledge of a "relationship" between the arbitrator and his son's lack of success with the apprenticeship program.  (Of course, if there is insufficient nexus to establish this constructive knowledge, then how is it that Mr. Milne had a duty to even disclose the issue?)

Local 341 criticizes AS&G's reliance on Fidelity Federal Bank v. Durga Ma Corporation, 386 F.3d 1306 (9th Cir. 2004) on the grounds that the conclusions reached by the court ultimately may not have favored AS&G's position.  However, Durga Ma is important for the analysis used in reaching its conclusions.  Durga Ma held that if a party had constructive knowledge and failed to act upon that event in a timely fashion, then the objections to an arbitration based upon that knowledge of objectionable circumstances would

---

[2]  The Union suggests AS&G trivializes the appointment process.  Opposition Memorandum at 6.  This is untrue and unfair.  AS&G very clearly seeks to invoke the finality and expediency built into arbitrations consistent with this court's own views on the arbitral process.  To achieve that, AS&G and the Union mutually agreed to abbreviate the appointment process; the Union could well have insisted on particular rules for appointment, but it did not.

Laborer's Local 341 v. AS&G A05-250                                    Page 10
Reply in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Reply in Support of Cross Motion.wpd

**Wohlforth | Johnson | Brecht Cartledge | Brooking**
A PROFESSIONAL CORPORATION
900 WEST 5TH AVENUE, SUITE 600
ANCHORAGE, ALASKA 99501-2048
Phone: 907.276.6401    Fax: 907.276.5093
www.akatty.com

be waived. That is the circumstance here if the court were to find that there is sufficient nexus between the apprenticeship program and Local 341.

Let us assume that, as Mr. Gallagher and his counsel argue, the apprenticeship program has a close relationship with Local 341. If so, then as an intertwined, unitary business association - - an example being a corporation - - the knowledge of one officer is imputed to the entity as a whole. Under Alaska case law, citing U.S. Supreme Court precedent:

> It is a general rule of agency that knowledge acquired by an officer or agent of a corporation while acting in his official capacity or within the scope of his duties will be imputed to the corporation. It ha long been settled that this rule is fully applicable to banking corporations and associations. *See e.g.,* Curtis v. Connly, 257 U.S. 260, 42 S.Ct. 100, 66 L.Ed. 222 (1921); American Nat'l Bank v. Miller, 229 U.S. 517, 33 S.Ct. 883, 57 L.Ed. 1310 (1913).

<u>Fikes v. First Federal Sav. & L. Ass'n of Anchorage</u>, 533 P.2d 251, 259 fn 8 (Alaska 1975). In <u>Fikes</u>, the bank was found to have constructive knowledge of the interest in the same real property from each of two parties dealing with bank lending officers. 533 P.2d at 259. See also, Am. Jur. 2d, "Corporations" §1443 which summarizes the law as:

> The rule that knowledge of a corporation's officers and agents will be imputed to the corporation is based on the theory of the identity of the corporation and its agents or on the theory that it will be conclusively presumed that the agent will communicate to the corporation whatever knowledge or notice the agent receives in relation to his or her agency that is necessary to protect the interests of the corporation. Because corporations are artificial legal entities and can act and do business only through officers, agents, or employees, a corporation can acquire knowledge only through its officers and agents; thus the only knowledge that a corporation can be said to have is the knowledge imputed to it under principles of agency law. Because a corporation operates through individuals,

**Wohlforth | Johnson | Brecht Cartledge | Brooking**
A PROFESSIONAL CORPORATION
900 WEST 5TH AVENUE, SUITE 600
ANCHORAGE, ALASKA 99501-2048
Phone: 907.276.6401   Fax: 907.276.5093
www.akatty.com

Laborer's Local 341 v. AS&G A05-250                                    Page 11
Reply in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Reply in Support of Cross Motion.wpd

> the privity and knowledge of individuals at a certain level of responsibility must be deemed the privity and knowledge of organization or else the corporation could always limit its liability. [Footnotes omitted.]

Here, the supposed monolith of laborers union interests (Local 341, Local 942 and apprenticeship program), if it exists, is bound by the same imputed knowledge which Mike Gallagher testified to be held by Dan Simonian, president business agent of Local 942 and trustee of the apprenticeship program (Exhibit B at 6 and 10 [Gallagher Deposition at 21, 36-37]) and Tim Sharp, Business Manager of Local 942 and trustee of the apprenticeship program (Exhibit B at 9 and 10 [Gallagher Deposition at 31, 36-37]). As Mr. Gallagher knows, Messrs. Simonian and Sharp had actual knowledge of young Abraham Milne's circumstances prior to Clark Milne's appointment. If they knew it, Local 341 constructively knew it. And once that knowledge exists, Local 341 cannot sit on its hands and later object on the basis of information it constructively had. <u>Durga Ma</u> so held; basic laws of agency, corporate responsibility, and equity would also so hold.

The courts have clearly held that finality is important in the arbitral process, that the parties have chosen a process among themselves to contractually bind themselves, and the parties should meet a high burden in order to overcome a decision that has been reached. The cases cited by the Union itself support this very proposition. Given these considerations, all knowledge imputed to the laborers "group" of entities is constructive knowledge of great weight which further supports application of the doctrine of waiver.

**Wohlforth | Johnson | Brecht Cartledge | Brooking**
A PROFESSIONAL CORPORATION
900 WEST 5TH AVENUE, SUITE 600
ANCHORAGE, ALASKA 99501-2048
Phone: 907.276.6401   Fax: 907.276.5093
www.akatty.com

Laborer's Local 341 v. AS&G A05-250                    Page 12
Reply in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Reply in Support of Cross Motion.wpd

## CONCLUSION

For the reasons set forth in this Reply and in the Memorandum in Support of Defendant's Cross Motion for Summary Judgment, summary judgment should be entered in favor of defendant AS&G and the complaint dismissed.

DATED at Anchorage, Alaska this 8th day of March, 2006.

Wohlforth, Johnson, Brecht,
Cartledge & Brooking
Attorneys for Defendant
Anchorage Sand and Gravel Co., Inc.

          s/Robert M. Johnson
900 W 5th Avenue, Suite 600
Anchorage, AK 99501
Phone: (907) 276-6401
Fax: (907) 276-5093
Email: rjohnson@akatty.com
Alaska Bar ID No. 7410086

### Certificate of Service

I hereby certify that on March 8, 2006, a copy of foregoing Reply in Support of Cross Motion for Summary Judgment was served electronically on Heidi Drygas and Kevin Dougherty.

          s/Robert M. Johnson

Wohlforth | Johnson | Brecht Cartledge | Brooking
A PROFESSIONAL CORPORATION
900 WEST 5TH AVENUE, SUITE 600
ANCHORAGE, ALASKA 99501-2048
Phone: 907.276.6401   Fax: 907.276.5093
www.akatty.com

Laborer's Local 341 v. AS&G A05-250                 Page 13
Reply in Support of Cross Motion for Summary Judgment
I:\Docs\57060302\Reply in Support of Cross Motion.wpd